# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER LYNN M.,[1] | Case No. 2:24-cv-09056-PD |
| Plaintiff, | |
| v. | **MEMORANDUM OPINON AND ORDER REVERSING AGENCY DECISION AND REMANDING** |
| FRANK BISIGNANO, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff challenges the denial of her applications for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons stated below, the decision of the Administrative Law Judge is reversed, and the Court remands this matter for further proceedings consistent with the Order.

---

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the United States Judicial Conference Committee on Court Administration and Case Management.

## I.      Pertinent Procedural History and Disputed Issues

### A.      Prior Proceedings

In March 2017, Plaintiff applied for DIB and SSI, claiming a disability since September 2013. *Jennifer Lynn M. v. Kijakazi*, Case No. 2:20-cv-03639-PA-PD, Dkt. No. 23. In June 2019, Administrative Law Judge ("ALJ'") Joyce Frost-Wolf denied the claims. *Id.*, Dkt. No. 18-3. Plaintiff appealed, and in September 2021 judgment was entered remanding the case to the Commissioner for further proceedings consistent with the Report and Recommendation, which concluded that the ALJ had improperly discounted the opinion of Elke Kurpiers, Ph.D., and failed to identify specific, clear and convincing reasons supported by substantial evidence to reject Plaintiff's symptom testimony. *Id.*, Dkt. Nos. 23, 25. In December 2021, the Appeals Council remanded the case for further proceedings consistent with the district court's order. AR 1156.[2] Plaintiff had filed a claim for disability benefits on May 20, 2020, subsequent to the claim in Case No. 2:20-cv-03639-PA-PD, and the Appeals Council consolidated them. *Id.* The Appeals Council ordered the ALJ to "offer the claimant the opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision." *Id.*

In January 2022, ALJ Daniel Benjamin held a hearing on the consolidated claims and denied them in an order dated March 16, 2022. AR 1039–1057. The Appeals Council denied Plaintiff's request for review. AR 1012–1018. Plaintiff appealed, and on June 27, 2023, the parties stipulated to remand the case, stating "[t]he Appeals Council will instruct the ALJ to hold a new hearing and to re-evaluate the evidence of record." *McMurrain v.*

---

[2] The Administrative Record is at Docket Numbers 11-1 through 11-25.

*Kijakazi*, No. 2:23-cv-00385-PA-PD, Dkt. No. 16.  On June 29, 2023, the District Court ordered the remand pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with the parties' stipulation.  *Id.,* Dkt. No. 17.  On October 13, 2023, the Appeals Council issued a remand order setting forth the two issues to be resolved by the ALJ and providing specific direction to the ALJ.  AR 2321-27.

### B.   ALJ Opinion

On June 6, 2024, ALJ Elizabeth Stevens Bentley conducted a hearing, at which Plaintiff requested a closed period of disability from the alleged onset date of September 6, 2013, through March 31, 2021 (the "Disability Period").  AR 2196.  ALJ Bentley issued an opinion on June 24, 2024, finding that Plaintiff has not been under a disability within the meaning of the Social Security Act from September 6, 2013, through the date of the ALJ's decision.  AR 2195-214.   The ALJ acknowledged Plaintiff's request for a closed period of disability, but found that Plaintiff "is not disabled during this period, such that the medical improvement review standard would apply in this case."  AR 2196.  There is no indication in the record that Plaintiff filed written exceptions with the Appeals Council or that the Appeals Council reviewed the ALJ's decision, which therefore became final on the sixty-first day following its issuance.  AR 2193.

The ALJ followed the five-step sequential evaluation process to assess whether Plaintiff was disabled under the SSA.  *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995), *superseded on other grounds by regulation*, Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5852 (Jan. 18, 2017) (codified at 20 C.F.R. pts. 404 & 416), *as recognized in Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022).

3

At step one, the ALJ found that Plaintiff must establish disability on or before September 30, 2015, in order to be entitled to a period of disability and disability insurance benefits.  AR 2198 ¶ 1.  The ALJ stated that Plaintiff had engaged in substantial gainful activity since June 2022 and was not seeking disability benefits for the period since her return to work.  AR 2198 ¶ 2.  The ALJ also found that there has been a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity.  AR 2198 ¶ 3. The ALJ stated that the remaining findings address the period(s) when Plaintiff did not engage in substantial gainful activity. *Id.*

At step two, the ALJ found that Plaintiff has the following severe impairments: bipolar disorder and anxiety disorder.  AR 2198 ¶ 4.  The ALJ also found that Plaintiff has the following nonsevere impairments: attention deficit hyperactivity disorder and polysubstance abuse.  AR 2198-99.

At step three, the ALJ found that Plaintiff's impairments did not meet the criteria of an impairment that triggers a presumption of disability.  AR 2199-200 ¶ 5.  *See* 20 C.F.R. Part 404, Subpart P, Appendix 1.

Before proceeding to step four, the ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC")

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: limited to simple and routine tasks not at a production rate pace; can have occasional coworker and public contact; and off task 10 percent of the workday and absent 1 day per month.

AR 2201–02.

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.  AR 2212 ¶ 7.

At step five the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  AR 2212-213. Accordingly, the ALJ concluded that Plaintiff has not been under a disability,

as defined in the Social Security Act, from September 6, 2013, through the date of the decision. AR 2213 ¶ 10.

### C. Issues on Appeal

Plaintiff raises two issues: (1) the ALJ erred by violating the "Rule of Mandate" and failing to follow the remand order to perform an adequate evaluation of the opinion of treating psychologist Peggy Jackson Salcedo, Ph.D.; and (2) the ALJ erred by failing to follow the "Rule of Mandate" and provide an adequate explanation of Plaintiff's subjective complaints. Dkt. No. 21 at 6.

## II. Standard of Review

Under 42 U.S.C. § 405(g), a district court may review the agency's decision to deny benefits. A court will vacate the agency's decision "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." *Coleman v. Saul*, 979 F.3d 751, 755 (9th Cir. 2020) (citation and internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Id.* (citation and internal quotation marks omitted); *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (same).

It is the ALJ's responsibility to determine credibility and to resolve conflicts in the medical evidence and ambiguities in the record. *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020). "Where evidence is susceptible to more than one rational interpretation," the ALJ's reasonable evaluation of the proof should be upheld. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008); *Tran v. Saul*, 804 F. App'x 676, 678 (9th Cir. 2020).[3]

---

[3] Although statements in unpublished Ninth Circuit opinions "may prove useful [] as examples of the applications of settled legal principles," the Ninth Circuit has

Error in Social Security determinations is subject to harmless error analysis.  *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012).  Error is harmless if it is "inconsequential to the ultimate nondisability determination" or, despite the legal error, "if the agency's path may reasonably be discerned." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citation and internal quotation marks omitted).

## III.   Discussion

### A.   Dr. Jackson Salcedo

Plaintiff began treating with Dr. Jackson Salcedo, a psychologist, in August 2018 for bipolar I disorder (primary), attention deficit hyperactivity disorder ("ADHD") (secondary), and posttraumatic stress disorder ("PTSD") (tertiary).  AR 1660, 1663.  Plaintiff met with Dr. Jackson Salcedo several times each month in late 2018, 2019 and 2020.  *See* AR 1660–67.  She also saw a psychiatrist, whose notes in February, June, October and November 2019, and January, February, April, June, July, August, and September 2020 state that Plaintiff continued to work with her therapist, Dr. Jackson Salcedo, at least three times per month and found it helpful.  AR 973-74, 1827-28, 1841-42, 1848-49, 1856-57, 1864-65, 1872-73, 1897, 1906-7, 1927-28, 1934-35, 1941-42.

On February 4, 2019, Dr. Jackson Salcedo completed a "Disability Verification (Psychological Disabilities)" form regarding Plaintiff.  AR 1011. On the form, the doctor wrote that Plaintiff's Diagnostic and Statistical Manual of Mental Disorders ("DSM"), fifth edition, diagnosis is "Bipolar I –

---

cautioned lower courts not to rely heavily on such memorandum dispositions particularly as to issues of law.  *Grimm v. City of Portland*, 971 F.3d 1060, 1067 (9th Cir. 2020) ("a nonprecedential disposition is not appropriately used . . . as the pivotal basis for a legal ruling by a district court").

Current Episode Depressed." *Id.* The doctor identified the level of severity as "moderate". *Id.* The doctor noted that Plaintiff is "motivated, but needs help" and identified the following functional limitations: easily distracted, poor concentration, difficulty formulating and executing plan of action, difficulty focusing for extended periods of time. *Id.*

### 1.    Remand Order

The remand order issued by the Appeals Council on October 13, 2023, stated:

> The Appeals Council hereby vacates the final decision of the Commissioner of Social Security and remands this case to an Administrative Law Judge for resolution of the following issues:
>
> ●    The hearing decision does not contain an adequate evaluation of the opinion of the claimant's psychologist, Peggy Jackson Salcedo, Ph.D. In June 2019, Dr. Jackson Salcedo opined that the claimant had functional limitations that included poor concentration, difficulty formulating and executing a plan of action, difficulty focusing for extended period of time, and being easily distracted [AR 1011].[4] The Administrative Law Judge gave little weight to Dr. Jackson Salcedo's opinion citing a treatment note in June 2019 indicating the claimant's condition is well-controlled and the claimant's testimony that she has attended college since 2018 average just under a 3.0 GPA [AR 1052]. However, in considering Dr. Jackson Salcedo's opinion, the decision did not address evidence that is inconsistent with the Administrative Law Judge's findings. For instance, the evidence notes that the claimant was still having manic episodes, experiencing increased anxiety, and engaging in risky behaviors in October 2019 and thereafter [AR 2151-52]. In March 2020, the claimant is noted to have made minimal progress and her condition is noted to move from better to worse and then somewhat better [AR 1667]. Additionally, the claimant testified that she had audio textbooks because it is very difficult for her to read and retain information [AR 42]. The claimant also testified that her grades dropped considerably when she went to school for

---

[4] As discussed above, Dr. Salcedo's opinion is dated February 4, 2019.  AR 1011.

7

more than 30 hours per week [AR 1074].  The claimant further testified that she was allowed to leave the classroom, as needed, for 10-15 minutes at a time without being questioned about her absence [AR 1092].

Accordingly, further consideration of Dr. Jackson Salcedo's opinion is warranted.

AR 2323-24.

The Appeals Council further stated that "[u]pon remand the Administrative Law Judge will:

● Give further consideration to the opinion of Peggy Jackson Salcedo, Ph.D. as discussed above, pursuant to the provisions of 20 CFR 404.1527 and 416.927, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the treating source provide additional evidence and/or further clarification of the opinion (20 CFR 404.1520b and 416.920b). The Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in developing evidence from the claimant's treating source.

*Id.*

### 2. The ALJ's Discussion of Dr. Jackson Salcedo's Opinion

On remand, the ALJ did not develop any additional evidence from Dr. Jackson Salcedo; the ALJ did not request additional evidence from the doctor or request clarification of the doctor's opinion.

The ALJ did further explain the basis for giving little weight to Dr. Jackson Salcedo's opinion.  The ALJ stated that Plaintiff began treating with Dr. Jackson Salcedo, a psychologist, in August 2018 for bipolar I disorder, current episode depressed, moderate.  AR 2203 (citing AR 1011).  The ALJ explained:

On February 4, 2019, Dr. Salcedo opined the claimant's bipolar I disorder, current episode depressed, moderate, caused learning difficulty with functional limitation of poor concentration, difficulty formulating and executing a plan of action, difficulty focusing for extended period of time, and being easily distracted

8

[citing AR 1011]. The undersigned gives little weight to Dr. Salcedo's opinion. Although Dr. Salcedo does not specify the most the claimant is able to do, the undersigned notes that in June 2019, the claimant endorsed stable mood, sleep, appetite, energy, anxiety, and interests, she reported medication quite helpful for her attention and concentration without obvious side effects, and she said she continued seeing Dr. Salcedo at least three times per month and found it helpful [citing AR 1897-98]. The mental status examination revealed she was alert, awake, and fully oriented, had intact recent and remote memory, and had intact attention/concentration [citing AR 1898]. The impression was well-controlled [citing AR 1900]. In October 2019, the claimant complained to Dr. Salcedo of mania episodes, increased anxiety, and risky behaviors, but earlier in the month, the claimant reported to psychiatrist stable mood, sleep, appetite, energy, anxiety, and interests on Vraylar, less "paranoid," no issues with compulsive/excessive spending, not needing/using quetiapine at bedtime because sleeping well, no issue with attention/concentration/focus on Strattera, and being a full-time college student [citing AR 1872]. At psychiatric follow-up in November 2019, the claimant continued reporting stable mood, sleep, appetite, energy, anxiety, and interests, and denied impulsivity, racing thoughts, excessive irritability, and trouble sleeping (not needing/using quetiapine) [citing AR 1864]. In March and April 2020, the claimant complained of worsening stress living 24/7 with her live-in partner and taking online college courses, but this was in the context of COVID-19 pandemic restrictions [citing AR 1667, 1841 1845]. After medication adjustments, in August 2020, the claimant reported "doing much better," describing improved mood, no impulsivity or erratic behavior, and stable overall mood, anxiety, appetite, interests, energy, and attention/concentration [citing AR 1934]. The claimant testified she obtained her bachelor's degree in psychology in four years, with the help of the learning assistance program. She testified she was always late with her assignments, but she was completely focused on getting her schoolwork done. Subsequently, the claimant testified she has been working as a full-time early recovery specialist for the past two years. In January 2024, Dr. Starrett opined the claimant was mildly limited in her work-related abilities, and he noted the claimant was able to complete testing for accurate results [AR 2594]. That the claimant was able to alleviate her symptoms with medications and psychotherapy, graduate from college within four

9

years, and sustain full-time work activity for the past two years, undercuts Dr. Salcedo's opinion of disabling limitations.

AR 2207-8.

### 3. Legal Standard

#### a) The Rule of Mandate

"[T]he law of the case doctrine and the rule of mandate apply to social security administrative remands from federal court in the same way they would apply to any other case." *Stacy v. Colvin*, 825 F.3d 563, 566 (9th Cir. 2016). The rule of mandate "provides that any '[lower] court that has received the mandate of an appellate court cannot vary or examine that mandate for any purpose other than executing it.'" *Id.* (citation omitted). "The district court may, however, 'decide anything not foreclosed by the mandate.' But the district court commits 'jurisdictional error' if it takes actions that contradict the mandate." *Id.* (citation omitted). Whether an ALJ has obeyed the remand order of an appellate court is a question of law that the Ninth Circuit reviews de novo. *See Sullivan v. Hudson*, 490 U.S. 877, 886 (1989).

Plaintiff contends the ALJ violated the Rule of Mandate by failing to follow the Appeals Council's October 13, 2023 remand order.

#### b) Evaluation of Treating Physician Opinion

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Ruling 96-8P, 1996 WL 374184, at *1 (1996). It reflects the most a claimant can do despite their limitations. *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996). An RFC determination must be based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources, such as treating and examining physicians. 20 C.F.R. § 404.1545. It is the ALJ's responsibility to

10

resolve conflicts in the medical evidence and ambiguities in the record.  *Ford*, 950 F.3d at 1149.  Where this evidence is "susceptible to more than one rational interpretation" the ALJ's reasonable evaluation of the proof should be upheld.  *Ryan*, 528 F.3d at 1198.

### 4.   Analysis

Here, as required by the remand order, the ALJ was required to analyze Dr. Jackson Salcedo's opinion pursuant to 20 C.F.R. § 404.1527, the pre-2017 regulation that applies to Plaintiff's claim.[5]  Under that regulation, "ALJs are required to give greater weight to certain medical opinions." *Farlow*, 53 F.4th at 488.  "Opinions from treating physicians receive more weight than opinions from examining physicians, and opinions from examining physicians receive more weight than opinions from non-examining physicians." *Id.* (citations omitted).  "To reject the uncontested opinion of an examining or treating doctor, an ALJ must provide 'clear and convincing' reasons supported by substantial evidence. *Id.* (citations omitted).

Rejecting a contradicted opinion of a treating or examining physician requires " 'specific and legitimate reasons' supported by substantial evidence". *Lester*, 81 F.3d at 831 (citations omitted).  The ALJ did not expressly state that any medical opinion contradicted Dr. Jackson Salcedo's opinion for the Disability Period.  The ALJ gave substantial weight to Dr. Starrett's opinion that Plaintiff has "mild work-related mental limitations."  AR 2209 (citing AR 2590-95).  Dr. Starrett, whose report is dated January 27, 2024, *see* AR 2590, examined Plaintiff almost three years after the disability period closed and, as the ALJ acknowledged, Dr. Starrett hardly reviewed any of Plaintiff's medical

---

[5] Plaintiff filed her claim before March 27, 2017, the effective date of new regulations for evaluation of medical opinion evidence. *See Revisions to Rules Regarding Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.

11

records for the period prior to Plaintiff starting her job in June 2022. AR 2209. Accordingly, the Court finds that Dr. Starrett's 2024 opinion does not contradict Dr. Jackson Salcedo's February 2019 opinion for the Disability Period.

The ALJ also credited the opinion of Dr. Andert, who testified at the hearing on June 6, 2024. AR 2210, 2240-46. Dr. Andert reviewed all the medical records, but did not examine Plaintiff. Dr. Andert found the record supported the bipolar disorder diagnosis. *See* AR 2241. He testified, based on the records, that Plaintiff would have had a mild limitation in understanding, remembering and applying information; he also testified that Plaintiff's concentration, persistence, and pace would have been in the moderate degree of limitation, and that the severity of her depression and anxiety would have interfered to a moderate degree with her attention and concentration. AR 2243-44. He also testified that "[a]daption and management would be an issue" and that her depression and anxiety symptoms would have been "at least a moderate intrusion" in a work setting due to difficulties managing her emotions and behavior. AR 2244. Dr. Andert's opinions, based on his review of the record, do not contradict Dr. Jackson Salcedo's opinion that Plaintiff has moderately severe bipolar disorder, was easily distracted, had poor concentration, difficulty formulating and executing a plan of action, and difficulty focusing for extended periods of time. AR 1011. Dr. Andert found some of Plaintiff's symptoms (mild limitations in understanding, remembering, and applying information) less severe than Dr. Jackson Salcedo did, but unlike Dr. Jackson Salcedo, Dr. Andert did not examine Plaintiff during the Disability Period, and his perspective was informed by Plaintiff's improvement after the Disability Period. He testified that Plaintiff's symptoms had improved on the end of the closed Disability Period. *See* AR

12

2246.  On this record, the Court concludes that Dr. Andert's opinion does not contradict that of Dr. Jackson Salcedo for the Disability Period.

The ALJ gave partial weight to the June 2017 opinion of Dr. Goldberg, the state agency psychological consultant who initially reviewed Plaintiff's claims but did not examine Plaintiff.  The ALJ stated that Dr. Goldberg found Plaintiff capable of performing simple tasks, but without coordination or speed, with difficulty getting along with others in most situations, and with difficulty adapting to change and independent travel on unfamiliar routes.  AR 2208 (citing AR 85-87.)  Based on his review of the records, Dr. Goldberg concluded that Plaintiff had adaptation limitations and sustained concentration and persistence limitations and that her abilities to do the following are moderately limited:  respond to changes in the work setting; travel in unfamiliar places or use public transportation; carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or in proximity to others without being distracted by them; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; adhere to basic standards of neatness and cleanliness; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods.  AR 85-87.  The ALJ's explanation for generally agreeing with Dr. Goldberg's opinion focuses on Plaintiff's improvement, including after the Disability Period ended.  *See* AR 2208-9.

Dr. Goldberg's findings are generally consistent with Dr. Jackson Salcedo's opinion that Plaintiff has moderately severe bipolar disorder, was easily distracted, had poor concentration, difficulty formulating and executing

a plan of action, and difficulty focusing for extended periods of time.  AR 1011. Arguably, however, Dr. Jackson Salcedo found Plaintiff's abilities to concentrate and stay on task more impaired than Dr. Goldberg did.  The Court therefore applies the standard for analyzing a contradicted opinion, that is, whether the ALJ provided " 'specific and legitimate reasons' supported by substantial evidence" *Lester*, 81 F.3d at 831 (citations omitted), for assigning little weight to Dr. Jackson Salcedo's opinion.

The ALJ provided the following reasons for discounting that opinion:

- June 2019 medical records that Plaintiff "endorsed stable mood, sleep, appetite, energy, anxiety, and interests," reported that medication was quite helpful for her attention and concentration without obvious side effects, and seeing Dr. Jackson Salcedo three times monthly was quite helpful.

- June 2019 mental status exam revealed that Plaintiff was alert, awake and fully oriented, had intact recent and remote memory and had intact attention, concentration, and the impression was "well controlled."

- October 2019, despite Plaintiff's complaints to Dr. Jackson Salcedo of mania episodes, increased anxiety, and risky behaviors, earlier that month Plaintiff had told her psychiatrist that while taking Vraylar, her mood, sleep, appetite, and interests were stable, she was less paranoid, no longer engaging in compulsive behaviors, had no issues with attention/concentration while taking Strattera, and was a full-time college student.

- November 2019 psychiatric follow-up in which Plaintiff continued reporting stable mood, sleep, appetite, energy, anxiety, and interests, and denied impulsivity, racing thoughts, excessive irritability, or trouble sleeping.

- March and April 2020 Plaintiff complained about worsening stress, that the ALJ attributed to the pandemic.

- After August 2020 medication adjustments, Plaintiff reported doing much better and described improved mood, no impulsivity or erratic

14

behavior, and stable overall mood, anxiety, appetite, interest, energy, and attention/concentration.

- Plaintiff testified that in 2022 she obtained her bachelor's degree in psychology in four years with help of the learning assistance program, that she was always late with her assignments but was completely focused on getting her schoolwork done. AR 2229, 2236.

- Plaintiff later testified she had been working as a full-time recovery specialist for two years (beginning in June 2022). AR 2229-30.

- Dr. Starrett's January 2024 opinion.

- That Plaintiff "was able to alleviate her symptoms with medications and psychotherapy, graduate from college within four years, and sustain full-time work activity for the past two years, undercuts Dr. [Jackson] Salcedo's opinion of disabling limitations."

AR 2207-8.

As an initial matter, the Disability Period ended March 30, 2021. *See* AR 2231. That Plaintiff began working full-time in June 2022, over a year after the disability period had ended, is not a specific and legitimate reason supported by substantial evidence to discount Dr. Jackson Salcedo's opinion. Likewise, Dr. Starrett's January 2024 assessment (which was not based on a review of the records for the Disability Period) of mild work-related limitations, is not a specific and legitimate reasons supported by substantial evidence to discount Dr. Jackson Salcedo's opinion.

Plaintiff contends the records reflect that Plaintiff's symptoms waxed and waned in the course of treatment during the Disability Period. Plaintiff was prescribed numerous medications during the Disability Period to address anxiety, obsessive-compulsive disorder, paranoia, feelings of mania and manic episodes, mood swings, and insomnia. *See* Dkt No. 21 at 17, 19-20. These medications include Celexa, Wellbutrin, Vistaril, Buspar, Risperidone,

15

Depakote, Trilafon, Abilify, Geodon, Trileptal, Quetiapine, and Citalopram.[6] *Id.* at 20. At a February 2019 emergency appointment – the same month as Dr. Jackson Salcedo's opinion -- the psychiatrist concluded that Plaintiff's symptoms (of bipolar I disorder, current or most recent episode hypomanic, and posttraumatic stress disorder) were "inadequately controlled" and adjusted her medications. AR 976, 978.

At subsequent appointments, even when Plaintiff's condition was described as "well controlled," the psychiatrist adjusted the medications and the dosages of these medications. AR 1839, 1846, 1854, 1884, 1886, 1892, 1906, 1911, 1928, 1932, 1934, 1946. These medications were often prescribed to address symptoms that included manic episodes, anxiety, obsessive-compulsive disorder behavior including picking at her face, paranoia, hypervigilance, impulsiveness with money, depression, and poor concentration. *See* Dkt. No. 21 at 16-17. In discounting Dr. Jackson Salcedo's opinion, the ALJ selected records of Plaintiff reporting that various symptoms were under control; however, the overall record for the Disability Period shows that her symptoms waxed and waned as she attended numerous appointments with the psychologist and psychiatrist and experienced the effects of a variety of mental health medications, with dosages adjusted and re-adjusted to address those symptoms, and that her symptoms improved over

---

[6] The following is from https://drugs.com:

Celexa is an antidepressant that is used to treat severe depression in adults.
Wellbutrin is an antidepressant medicine.
Vistaril reduces activity in the central nervous system.
Buspar is an anti-anxiety medicine.
Risperidone, Abilify, Geodon, and Trilafon are antipsychotic medicines.
Depakote is an anticonvulsant drug that treats seizures, migraines, and bipolar disorder, and Trileptal is an anticonvulsant or antiepileptic medicine.
Quetiapine is used to treat episodes of mania or depression in patients with bipolar disorder.
Citalopram is used to treat depression.

16

time.  The ALJ selected Plaintiff's report as doing much better after August 2020 medication adjustments, AR 2208, but at the September 23, 2020 visit with her psychiatrist, Plaintiff requested "additional or different mood stabilizer as she reports still feeling paranoid about her family and friends" and her mood and affect were noted as "sad/depressed."  AR 1906-8.  "Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."  *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014); *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("[The treating physician's] statements must be read in context of the overall diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."); *Buck v. Colvin*, 540 F. App'x 772, 773 (9th Cir. 2013) (Given the episodic nature of bipolar disorder, short-lived improvements in functioning are consistent with the diagnosis and cannot, by themselves, constitute substantial evidence to override treating source opinions that Buck was significantly impaired.).

The ALJ also cited Plaintiff's obtaining her degree in psychology in four years, ending in 2022, as undercutting Dr. Jackson Salcedo's opinion.  The Disability Period ends in March 31, 2021, and thus includes approximately three years in which Plaintiff was in school.  In her April 2019 testimony, Plaintiff explained her accommodations at school, which included a learning assistance program in which all her textbooks were on audio so that she could hear the information at the same time she saw it on her computer.  AR 42. She was also allowed to come and go from the classroom during class as

17

needed, as the professors "understand that I do have mental health issues and can't really stay seated." AR 43. She further testified that it took her "twice as long" as other students to accomplish a task. AR 44. The accommodations are consistent with the poor concentration symptoms (poor concentration, easily distracted) that Dr. Jackson Salcedo found in February 2019. Moreover, mental health impairments must be evaluated with the awareness that improved functions – such as Plaintiff's improved functioning as she studied for her degree -- does not always mean that a claimant can function effectively in a workplace. *See Garrison*, 759 F.3d at 1017 (citing *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) ("Commissioner erroneously relied too heavily on indications in the medical record that Hutsell was 'doing well,' because doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity."); *Fillmore v. Comm'r. of Social Security*, 2021 WL 4206764, at * 17 (E.D. Cal. Sept. 16, 2021) (limitations on Plaintiff's ability to attend college classes do not necessarily describe someone capable of maintaining full-time competitive employment during the period Plaintiff was in school; to the contrary, they indicate significant limitations if translated to a work setting); *Danielle C. v. Berryhill*, 2019 WL 1976440, at *4 (D. Or. May 3, 2019) (ALJ gave insufficient reasons for rejecting the medical opinion because the ability to attend college classes with accommodations was not inconsistent with limitations in responding appropriately to usual work situations and changes in a routine work setting).

For these reasons, the Court concludes that the ALJ did not provide specific and legitimate reasons' supported by substantial evidence to reject

18

Dr. Jackson Salcedo's opinion.[7]

Plaintiff also contends the ALJ violated the Rule of Mandate. As noted above, on remand, the ALJ did not develop any additional evidence from Dr. Jackson Salcedo and did not request additional evidence from the doctor or request clarification of the doctor's opinion. However, the ALJ did further explain the basis for giving little weight to Dr. Jackson Salcedo's opinion. Although the Court concludes that the ALJ's explanation did not satisfy the applicable legal standard, the Court finds that it did comply with the mandate to give further consideration to Dr. Jackson Salcedo's opinion.

## B.    Plaintiff's Symptom Testimony

Plaintiff asserts that the ALJ's decision fails to follow the Rule of Mandate and fails to provide an adequate evaluation of Plaintiff's subjective complaints. Dkt. No. 21 at 23.

### 1.    Remand Order

The Appeals Council's remand order states:

> The hearing decision does not contain an adequate evaluation of the claimant's subjective complaint. The district court previously remanded this case because in discounting the claimant's report, the Administrative Law Judge did not sufficiently indicate what portions of the claimant's testimony was discounted and the basis for discounting the testimony; and for not addressing the accommodations the claimant received in school why [sic] discussing the claimant's activities [AR 1143-51]. On remand, the hearing decision contains a summary of the medical evidence without explaining how the evidence undermined the claimant's testimony [AR 1048-55]. The Administrative Law Judge did not sufficiently indicate what parts of the claimant's testimony he discounted and on what basis [AR 1054-55]. Furthermore,

---

[7] And to the extent Dr. Goldberg's opinion did not contradict that of Dr. Jackson Salcedo, there would be no medical opinion during the Disability Period contradicting Dr. Jackson Salcedo and the ALJ would have to provide clear and convincing reasons supported by substantial evidence.

19

although the Administrative Law Judge mentioned the claimant's testimony regarding her schooling and accommodations received, the decision does not consider the effect the accommodations had on the claimant's functioning [AR 1054-55]. Additionally, while the Administrative Law Judge mentioned the claimant's part-time work [AR 1055], the decision does not indicate how the claimant's ability to work part-time is inconsistent with her report that her symptoms worsened if her workload exceeded 30 hours per week. Accordingly, further consideration of the claimant's subjective report is warranted.

AR 2324.

The Appeals Council stated that upon remand, the ALJ will "[f]urther evaluate the claimant's alleged symptoms and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms (20 CFR 404.1529 and 416.929 and Social Security Ruling 16-3p)." AR 2324.

### 2.    Plaintiff's Hearing Testimony

The ALJ summarized Plaintiff's testimony as follows:

#### a)    April 2019 Testimony

The claimant testified at a hearing held on April 18, 2019. [AR 35.] She was attending college full-time, she listened to textbooks in audio format, she had trouble staying in her seat and her instructors allowed her to leave the classroom and return as needed, she had difficulty doing activities with other students because she could be overbearing and obnoxious, and she estimated her homework took twice as long as another person [AR 42-43]. The claimant lived with her ex-boyfriend's parents and interacted with them, she did dishes, and she cleaned her room [AR 36]. The claimant was in therapy and her medications were still being adjusted [AR 45]. She asserted uncontrolled symptoms, describing inability to focus and concentrate, and manic episodes every few months lasting from a day to two weeks, with medication sedating her and inhibiting daily functioning [AR 47-49]. The claimant felt anxious and picked at her face, she often felt paranoid about cars following her or bugs in her phone, and she avoids interacting with classmates in order to avoid conflicts that could return her to prison [AR 48–51].

20

AR 2210-11.

### b) January 2022 Testimony

The claimant testified at a hearing held on January 20, 2022. Her testimony indicates improved functioning, consistent with the treatment records. She testified she was a student since 2018, pursuing a bachelor's degree, and currently attending online, spending at least 30 hours per week. Prior to working, she testified she was achieving grades just under a 3.0 average. The claimant testified she had a temporary job at an autobody shop from 2018 to 2019, creating an employee handbook. She testified she completed a six-month unpaid internship in 2019, working 15 to 20 hours per week, for a total of 260 hours in the semester. The claimant testified she has had a paid internship since May 2021, working as a drug and alcohol counselor, 16 hours per week, at a rate of $17.50 per hour. Although sometimes getting distracted driving, the claimant testified she is able to carpool with a coworker who drives her to work. She testified she is able to use Lyft without a problem. The claimant testified extensively about lack of focus.

AR 2211.

### c) June 2024 Testimony

The claimant testified before the undersigned that she obtained her bachelor's degree in psychology with the help of the learning assistance program, which included extra time to complete assignments, extra tutoring, and help with scheduling classes. She also testified she would leave class as needed and was always late with her assignments. While her grade point average of 3.0 dropped when she went to school for more than 30 hours per week and worked part-time, she testified she completed her psychology degree program in four years. This is not an unusual length of time to obtain a bachelor's degree. During Dr. Starrett's psychological testing in January 2024, he noted the claimant had mildly impaired concentration and attention span and was able to complete testing for accurate results [AR 2590-95]. She was even able to self-correct on the Trail Making Test [AR 2594]. The claimant testified she still struggles with daily tasks, but she uses her phone to set reminders. Additionally, she testified she has been working as a full-time early recovery specialist for the past two years, and while she still has mostly manic versus depressive

> episodes, she is not seeking disability benefits since her return to work. This is consistent with the treatment evidence revealing the claimant's bipolar disorder, while not asymptomatic, is stable with medication management [850-875; 2596-606; 2698-778; 2796-805].

AR 2211-12.

### 3. Legal Standard

"To determine whether a claimant's subjective symptom testimony is credible, the ALJ must engage in a two-step analysis: 'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" *Ferguson v. O'Malley*, 95 F.4th 1194, 1199-1200 (9th Cir. 2024) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)). If step one is satisfied and there is no evidence of malingering, the ALJ can only reject the claimant's subjective symptom testimony "by offering specific, clear and convincing reasons for doing so." *Id.* (citation and internal quotation marks omitted).

At step two, an ALJ must identify which testimony is not credible and "link that testimony to the particular parts of the record supporting her non-credibility determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015); *accord Ferguson*, 95 F.4th at 1200. "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)); *see also Smartt v. Kijakazi,* 53 F.4th 489, 499 (9th Cir. 2022) ("Ultimately, the 'clear and convincing' standard requires an ALJ to show [their] work[.]"). Thus, to satisfy the substantial evidence standard, the ALJ must provide specific, clear, and convincing reasons which explain why the medical evidence is *inconsistent* with the claimant's subjective symptom

testimony.  *Ferguson*, 95 F.4th at 1200 (emphasis in original).

A court must "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [they] did not rely."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  The court "may not take a general finding — an unspecified conflict between Claimant's testimony about daily activities and her reports to doctors — and comb the administrative record to find specific conflicts."  *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).  ALJs must instead point to specific facts in the record to find a lack of credibility, and such findings are insufficiently specific where they are general, unspecified, and/or made in passing in a different section than the credibility determination.  *Id.*

An ALJ can consider whether there is a lack of objective medical evidence supporting a claimant's allegations.  However, this factor "cannot form the sole basis" for discounting subjective symptom testimony.  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005); *Davis v. Berryhill*, 736 F. App'x 662, 665 (9th Cir. 2018).

Inconsistent daily activities "may provide a justification for rejecting symptom testimony," but "the mere fact that a plaintiff has carried on certain daily activities [ ] does not in any way detract from her credibility as to her overall disability."  *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) (citation and quotations omitted).  Even when a claimant's activities "suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."  *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012); *Wennet v. Saul*, 777 F. App'x 875, 877 (9th Cir. 2019) (citing *Molina*).

When there is an error with one of the grounds the ALJ relied upon, "the relevant inquiry in this context is . . . whether the ALJ's decision remains

legally valid, despite such error." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). If an ALJ impermissibly relies "on one of several reasons in support of an adverse credibility determination," the error is harmless if "the ALJ's remaining reasoning and ultimate credibility determination were adequately supported by substantial evidence in the record." *Id.* at 1162 (emphasis omitted).

### 4.    Analysis

The ALJ discounted Plaintiff's April 2019 testimony as inconsistent with medical records in June, September, October, and November 2019 and January 2020 showing that her symptoms were under control and her condition was stable, and with Plaintiff's March 2021 report that was still a full-time student and said she enjoyed living with her friend and her cat. AR 2211. Specifically, the ALJ cited the June 2019 appointment with the psychiatrist in which Plaintiff "endorsed stable mood, sleep, appetite, energy, anxiety, and interests, and report an increased dose of atomoxetine[8] was quite helpful for her attention and concentration without obvious side effects," and that seeing Dr. Jackson Salcedo at least three time monthly was helpful. AR 2211 (citing AR 1897). The ALJ also referenced the mental status exam as

> significant for loud speech and inflated confidence/grandiose thought content with ruminations, but was otherwise normal, including euthymic mood, goal directed, organized, and logical thought process, intact insight and judgment, alert with full orientation, intact recent and remote memory, attention and concentration, and language, and average fund of knowledge. Her condition was noted to be well-controlled.

AR 2211 (citing AR 1898-99). However, the same report states Plaintiff's primary complaint as having been "manic since yesterday," and increased the

---

[8] Atomoxetine, brand name Strattera is used to treat attention deficit hyperactivity disorder (ADHD). https://www.drugs.com/atomoxetine.html.

atomoxetine dose.  AR 1897, 1902.  *See also* AR 1887 (August 2019 psychiatric report notes Plaintiff's self-reported hyperactivity, inattentiveness, inability to stay seated at meetings or gatherings; AR 1849 (February 2020 psychiatric report notes Plaintiff's self-reported irritability, anxiety, restlessness, fear of something awful happening, and problems with sleep and concentration); AR 1941-42 (July 2020 psychiatric report notes Plaintiff's self-reported being "possible manic the past 2 weeks," and being erratic, irritable, impulsive, paranoid and with unstable mood); AR 1927-28, 1932 (September 2020 psychiatric report noting Plaintiff stating that she was "totally manic," presented "hyper-talkative with racing thoughts," felt increasingly paranoid, needed 600 mg of Seroquel on some nights to fall asleep, smoking marijuana nightly for sleep, which was not helpful and the psychiatrist asked her to stop because continuous marijuana use increases mania; stopped taking Strattera due to hot flashes, and is concerned that the Latuda[9] is ineffective; psychiatrist considered adding low-dose Lithium if Plaintiff's mood is still unstable).

Regarding Plaintiff's January 2022 testimony, the ALJ stated that Plaintiff "testified extensively about lack of focus."  AR 2211.  The ALJ did not expressly state that this testimony was inconsistent with Plaintiff's daily activities, but the ALJ summarized Plaintiff's testimony that she was a student pursuing a bachelor's degree with classes entirely online, had a temporary job, completed two unpaid internships, carpooled with a coworker and uses Lyft.  AR 2211.  At the 2022 hearing, Plaintiff testified about her mental health symptoms, treatment and medication since 2013.  AR 1086– 94. The ALJ's discussion of Plaintiff's testimony does not address that testimony.

---

[9] Latuda is an antipsychotic medicine used to treat episodes of depression associated with bipolar disorder. https://www.drugs.com/latuda.

*See* AR 2211-12.

Regarding Plaintiff's 2024 testimony, the ALJ stated that Plaintiff obtained a bachelor's degree in psychology in four years, "which is not an unusual length of time to obtain a bachelor's degree." AR 2211. The ALJ discussed Dr. Starrett's psychological testing in January 2024, which showed mildly impaired concentration and attention span, and noted that Plaintiff's not seeking disability benefits since her return to work is consistent with the treatment evidence that her bipolar disorder is stable with medication management. AR 2212. The ALJ concluded that Plaintiff's "psychological functioning has improved with medication and psychotherapy" and when she is medication compliant, "she experiences symptom relief and has a stable condition." AR 2212.

Plaintiff has indisputably presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the symptoms alleged, and there is no evidence of malingering. Accordingly, the ALJ must provide specific, clear and convincing reasons to reject Plaintiff's subjective symptom testimony. The ALJ does not explain how the evidence of Plaintiff's performance on Dr. Starrett's psychological testing in January 2024, or the stability of her condition and her return to work, contradict her symptom testimony during the Disability Period. The medical records show the improvement in Plaintiff's condition, particularly from 2018 through 2024, with frequent therapy and numerous medication adjustments.

Evidence of improvement in response to treatment can be a sufficient basis for discounting subjective symptom testimony. *See* SSR 16-3P, 2016 WL 1119029, \*7 (Mar. 16, 2016) (listing factors to consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms); *Warre v. Comm'r,* 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can

26

be controlled effectively with medication are not disabling for purposes of determining eligibility for SSI benefits."). However, "the treatment records must be reviewed in light of the overall diagnostic record." *Trevizo v. Berryhill*, 871 F.3d 664, 680 (9th Cir. 2017) (quoting *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014)); *see also Garrison*, 759 F.3d at 1018 ("While ALJs obviously must rely on examples to show why they do not believe that a claimant is credible, the data points they choose must in fact constitute examples of a broader development to satisfy the applicable 'clear and convincing' standard.") (emphasis omitted).

Here, the medical records show that Plaintiff's symptoms improved and regressed during the Disability Period. As noted above, the ALJ cited specific instances of improvement in 2019 to discount Plaintiff's 2019 symptom testimony, but those same records also corroborate her 2019 testimony regarding inability to focus and concentrate, manic episodes, feeling anxious and picking at her face, and feeling paranoid. Plaintiff's symptom testimony, and the medical records, for the Disability Period show both improvement and debilitating symptoms. As the Ninth Circuit has acknowledged, in cases involving mental health, "[c]ycles of improvement and debilitating symptoms are a common occurrence." *Garrison*, 759 F.3d at 1017). This is particularly true where the underlying impairment is a bipolar disorder. *Fillmore*, 2021 WL 4206764, at * 13. Here, the record during the Disability Period shows ups and downs, through numerous medication adjustments, and does not provide a basis for discounting Plaintiff's subjective symptom testimony for that period.

The ALJ also referred to Plaintiff's ability to complete her college degree in four years as a basis to reject her symptom testimony. Inconsistent daily activities "may provide a justification for rejecting symptom testimony,"

27

although "the mere fact that a plaintiff has carried on certain daily activities [. . .] does not in any way detract from her credibility as to her overall disability." *Revels*, 874 F.3d at 667 (citation and quotations omitted). "Courts have repeatedly warned that ALJ's must be particularly cautious in concluding that daily activities are inconsistent with symptom testimony because impairments that would unquestionably preclude work would often be consistent with doing more than merely resting in bed all day." *Fillmore*, 2021 WL 4206764, at *16 (citing *Garrison*, 759 F.3d at 1016). Plaintiff testified to her accommodations, including the program that provided simultaneous audio for her reading assignments, permission to leave the classroom as needed to address her bipolar symptoms, and entirely online classes. *See Fillmore*, 2021 WL 4206764, at *17 (limitations on Plaintiff's ability to attend college classes do not necessarily describe someone capable of maintaining full-time competitive employment.).

Finally, Plaintiff contends that the ALJ failed to comply with the Rule of Mandate in evaluating her subjective symptom testimony. The ALJ did further evaluate Plaintiff's symptoms and provided a rationale in accordance with the disability regulations pertaining to evaluation of symptoms. Although the Court concludes that the ALJ did not provide specific, clear and convincing reasons to reject Plaintiff's subjective symptom testimony for the Disability Period, the ALJ did conduct an analysis as required by the remand order.

### C.    Credit as True

Plaintiff requests that the Court remand the claim for the payment of benefits based on the credit as true rule. "An automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1044

28

(9th Cir. 2017).  The Ninth Circuit employs a three-step framework, referred to as the "credit as true" rule, *Garrison*, 759 F.3d at 1020-21, to assess whether a case should be remanded for benefits.  First, the ALJ must have "failed to provide legally sufficient reasons for rejecting the evidence." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).  Second, there can be "no outstanding issues that must be resolved before a determination of disability can be made."  *Id.*  Finally, it must be "clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited."  *Id.*  The Ninth Circuit has explained that:

> Even if those requirements are met, though, [courts] retain "flexibility" in determining the appropriate remedy. In particular, [a reviewing court] may remand on an open record for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act."

*Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (internal citations omitted) (quoting *Garrison*, 759 F.3d at 1021).

Here, the ALJ failed to provide legally sufficient reasons for rejecting the evidence.  However, there are outstanding issues that must be resolved before a determination of disability can be made.  In discounting Dr. Jackson Salcedo's opinion and Plaintiff's subjective symptom testimony, the ALJ relied on Plaintiff's ability to manage her bipolar disorder symptoms with appropriate and effective medications after the Disability Period.  The ALJ did not analyze whether Plaintiff was disabled within the meaning of the Social Security Act based on the evidence during the Disability Period.  At Step One, the ALJ stated that the remaining findings address the period(s) when Plaintiff did not engage in substantial gainful activity.  AR 2198.  However, in discounting Dr. Jackson Salcedo's opinion and Plaintiff's subjective symptom testimony, the ALJ included evidence that post-dates the

Disability Period, including Plaintiff's work as a full-time recovery specialist beginning in 2022. *See* AR 2202. However, that Plaintiff and the mental health professionals assisting her had succeeded in controlling her bipolar disorder symptoms by 2022 is not determinative whether Plaintiff was disabled within the meaning of the Social Security Act between September 6, 2013 and March 31, 2021. Additionally, Plaintiff was incarcerated from September 2013 to February 2017. *See e.g.* AR 2202. Neither party has addressed whether or how Plaintiff's incarceration during part of the Disability Period affects her entitlement to DIB or SSI for the period when she was incarcerated

Accordingly, the case is remanded for a determination whether Plaintiff was disabled within the meaning of the Social Security Act between September 6, 2013 and March 31, 2021.

## IV.   Conclusion

For the foregoing reasons, the case is remanded for a determination whether Plaintiff was disabled within the meaning of the Social Security Act between September 6, 2013 and March 31, 2021, and if so, whether Plaintiff was eligible for DIB and or SSI during that period.

Dated:  March 30, 2026

_____
Patricia Donahue
United States Magistrate Judge

30